1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

PAUL M. CARRICK,

Plaintiff,

v.

SANTA CRUZ COUNTY; PLANNING
DEPARTMENT COUNTY OF SANTA CRUZ;
NEAL COONERTY; JOHN LEOPOLD;
ELLEN PIRIE; LEO CAPUT; MARK W
STONE, County Board of Supervisors, County
of Santa Cruz; SEAN SALDAVIA, County
Recorder; DANA MCKRAE, County Counsel;
TAMYRA RICE, Assistant County Counsel;
NANCY PREVISICH, Director of the Santa
Cruz Planning Department; and DOES 1-25,
inclusive,

Defendants.

Case No.: 12-CV-3852-LHK

ORDER GRANTING MOTION TO
DISMISS

On July 24, 2012, Plaintiff Paul M. Carrick ("Plaintiff") filed this action against Defendants
Santa Cruz County ("the County"); Planning Department County of Santa Cruz; five individual
members of the Santa Cruz County Board of Supervisors (Neal Coonerty, John Leopold, Ellen
Pirie, Leo Caput, and Mark W. Stone); County Recorder Sean Saldavia; County Counsel Dana
McKrae; Assistant County Counsel Tamyra Rice; and Director of the Santa Cruz Planning
Department Nancy Previsch (collectively, "Defendants"). *See* Dkt. No. 1. Defendants declined to
proceed before a Magistrate Judge, and this action was reassigned to the undersigned judge on July

1

31, 2012.  *See* Dkt. Nos. 20-22.  On July 31, 2012, Plaintiff filed a first amended complaint

("FAC").  *See* Dkt. No. 23.  On August 15, 2012, Defendants filed a motion to dismiss the FAC

under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be

granted.  *See* Dkt. No. 63.  Defendants also filed a request that the Court take judicial notice of

public records of a pending state court action involving the same parties and issues.  *See* Dkt. No.

65.  The Court takes judicial notice of these public documents.  *See Knievel v. ESPN,* 393 F.3d

1068, 1076 (9th Cir. 2005) (courts may take judicial notice of relevant public documents attached

to a motion to dismiss).  On August 29, 2012, Plaintiff filed his opposition.  *See* Dkt. No. 74.  On

September 5, 2012, Defendants filed their reply.  *See* Dkt. No. 75.  On October 2, 2012, Plaintiff

filed a declaration in support of his opposition to Defendants' motion to dismiss.  *See* Dkt. No. 77.

On October 16, 2012, Plaintiff filed a response to Defendants' reply to Plaintiff's opposition.  *See*

Dkt. No. 79.

Pursuant to Civil Local Rule 7-1(b), the Court found Defendants' motion appropriate for

determination without oral argument, and accordingly vacated the November 15, 2012 hearing and

case management conference.  The Court has considered Plaintiff's FAC, Defendants' motion and

request for judicial notice, Plaintiff's opposition and declaration in support of opposition,

Defendants' reply, and Plaintiff's response to Defendants' reply.  For the reasons discussed below,

the Court DISMISSES Plaintiff's complaint for failure to state a claim upon which relief can be

granted.

I.       BACKGROUND

Plaintiff owns property, including residential buildings, located in Santa Cruz County:

Assessor Parcel Numbers 106-011-25 and 106-011-58.  FAC ¶ 4; SCC.  Plaintiff leases space in his

residential buildings to tenants.  Plaintiff alleges that a disgruntled tenant attempted to excuse his

non-payment of rent by having the property declared substandard by the County.  FAC ¶ 24.  On

April 13, 2006, the County issued a Notice of Violation ("first NOV") citing Plaintiff for zoning

and building violations of the Santa Cruz County Code.  FAC ¶ 27.  The first NOV instructed

Plaintiff to cease construction, vacate illegal structures, and cease collecting rent illegally.  FAC ¶

25.  The first NOV also informed Plaintiff of his right to dispute the violations by meeting with a

2

representative of the Planning Director. *Id.* Plaintiff disputed the first NOV at a protest meeting with Planning Director representative Glenda Hill on May 11, 2006. FAC ¶ 32. However, Plaintiff did not prevail in his protest (FAC ¶ 33), and on December 20, 2006, the County recorded the first NOV against Plaintiff's property. FAC ¶ 34. On September 20, 2006, while Plaintiff's protest of the first NOV was pending, the County issued a second NOV, this time citing Plaintiff for grading without a permit. FAC ¶ 32.

Plaintiff did not cure the zoning and building violations that were the subject of the first NOV. On November 28, 2007, almost a year after the first NOV was recorded, the County filed a complaint against Plaintiff in the California Superior Court for the County of Santa Cruz seeking civil penalties and an injunction ordering Plaintiff to vacate or demolish the illegal buildings. *See* RJN, Ex. A. On November 29, 2007, the day after the County filed its action against Plaintiff, Plaintiff filed a cross-action complaint against the County seeking a writ of mandate and declaratory relief from the County's citations. *See* RJN, Ex. B.

Plaintiff declined to respond to discovery in the County's action against Plaintiff, and the Superior Court entered default against Plaintiff. Meanwhile, the County filed a demurrer to Plaintiff's cross-complaint, which was overruled-in-part and sustained-in-part. *See* RJN, Ex. C. Plaintiff's surviving causes of action proceeded to trial. The Superior Court ruled in favor of the County on all surviving claims. Accordingly, on April 10, 2010, the Superior Court entered default judgment for the County in its affirmative case, and entered judgment for the County in Plaintiff's cross-action. *See* RJN, Ex. D.

In the April 10, 2010 combined judgment on Plaintiff's and the County's cross-actions, the Superior Court ordered Plaintiff to either demolish the illegal units on his property or bring the units up to code. *See* RJN, Ex. D. The Superior Court also awarded civil penalties and attorney's costs and fees to the County. *See id.* Subsequently, Plaintiff moved to set aside the default judgment against him, and the Superior Court denied his motion. *See* RJN, Ex. E.

Plaintiff appealed both the Superior Court's refusal to set aside the default and the April 10, 2010 judgment in favor of the County on Plaintiff's cross-complaint. The Court of Appeal upheld the Superior Court's rulings in all respects but one: the Court of Appeal held that the County was

3

not authorized to record an NOV against Plaintiff's property without a court order.  *See* RJN Exh. F.  In response, the County expunged the first NOV.  *See* RJN, Ex. G.  However, on remand, the first NOV was re-recorded (re-recorded NOV), this time pursuant to the Superior Court's order. *See* RJN, Ex. I.

Having lost the appeal, Plaintiff filed a motion in the Superior Court to vacate the Superior Court's April 10, 2010 judgment, which was denied.  *See* RJN, Ex. J.  Plaintiff then appealed the April 10, 2010 judgment to the California Supreme Court, which declined to hear Plaintiff's appeal.  FAC ¶ 45.  The United States Supreme Court denied Plaintiff's petition for a writ of certiori, FAC ¶ 46, at which time the judgment became final.

Plaintiff did not pay the April 10, 2010 monetary judgments against him.  Accordingly, the County recorded a judgment lien against Plaintiff's property on April 27, 2012.  *See* FAC ¶ 50. Plaintiff also failed to comply with the Superior Court's order to demolish or repair the illegal units on his property.  Accordingly, on April 14, 2012, the County filed a motion for contempt.  *See* FAC ¶ 48.  A contempt hearing was held on April 25, 2012, *see* FAC ¶ 49, and on May 8, 2012, the Superior Court issued an order finding Plaintiff in contempt for failing to demolish or repair the illegal units.  *See* RJN, Ex. K.  The Superior Court ordered that Plaintiff be jailed until he submitted applications to correct the cited violations to the planning department.  *See* RNJ, Ex. K. However, the Superior Court stayed the sentence until September 26, 2012.  *See id.*  The Superior Court also ordered that the County was entitled to an award of attorney's fees and costs related to the contempt proceedings, and entered judgment against Plaintiff for that amount.  *See id.*  Plaintiff did not pay this second monetary judgment, and accordingly, the County recorded a second judgment lien against Plaintiff's property on July 11, 2012.

Plaintiff filed the instant action in federal court on July 24, 2012, alleging: (1) flaws in the County's underlying citation process; (2) flaws in the Superior Court trial; (3) flaws in the Superior Court contempt proceedings; and (4) flaws in judgment liens against Plaintiff's property.  On August 2, 2012, Plaintiff filed a motion for a preliminary injunction barring enforcement of the

**United States District Court**
For the Northern District of California

1  Superior Court contempt order.[1]  *See* Dkt. No. 36.  Two weeks later, Defendants filed the present

2  motion to dismiss.

3  **II.      LEGAL STANDARD**

4       **A.      Federal Rule of Civil Procedure 8**

5       Rule 8 states that a civil complaint "must contain . . . a short and plain statement of the

6  claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Supreme Court

7  has interpreted the "short and plain statement" requirement to mean that the complaint must

8  provide "the defendant [with] fair notice of what the . . . claim is and the grounds upon which it

9  rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355

10  U.S. 41, 47 (1957)).

11       **B.      12(b)(6) Motion to Dismiss for Failure to State a Claim**

12       A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal

13  sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In considering

14  whether the complaint is sufficient to state a claim, a court must accept as true all of the factual

15  allegations contained in the complaint.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  In

16  addition, pro se pleadings are liberally construed.  See *Haines v. Kerner*, 404 U.S. 519, 520-21, 92

17  S. Ct. 594, 595-96 (1972); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

18  However, a court need not accept as true "allegations that contradict matters properly subject to

19  judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of

20  fact, or unreasonable inferences."  *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

21  2008) (citation omitted).  While a complaint need not allege detailed factual allegations, it "must

22  contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

23  face.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp.*, 550 U.S. at 570).  A claim is facially

24

25  [1] Plaintiff's motion was not properly noticed, and so was not calendared until after Defendants filed
the present motion to dismiss.  Plaintiff then re-filed his motion four times, although Plaintiff did
26  not vacate his earlier motions for a preliminary injunction.  Each re-filing includes the identical
motion with a new supporting declaration.  *See* Dkt. Nos. 80-83 and attachments.  The re-filing
27  includes a declaration from Plaintiff, while the later three re-filings include declarations from
individuals purporting to have been harmed by the Santa Cruz County Planning Department in
28  unrelated code enforcement actions.  *See id.*  Plaintiff's motion for a preliminary injunction is set
for hearing on January 3, 2012.  *See* Dkt. No. 86.

Case No.: 12-CV-3852-LHK
ORDER GRANTING MOTION TO DISMISS

1  plausible when it "allows the court to draw the reasonable inference that the defendant is liable for

2  the misconduct alleged." *Id.*

3  ### C.    Leave to Amend

4      If a court grants a motion to dismiss, leave to amend should be granted unless the pleading

5  could not possibly be cured by the allegation of other facts.  *Lopez v. Smith*, 203 F.3d 1122, 1130

6  (9th Cir. 2000).  A court "may exercise its discretion to deny leave to amend due to 'undue delay,

7  bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by

8  amendments previously allowed, undue prejudice to the opposing party . . . , [and] futility of

9  amendment.'"  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir. 2010)

10  (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Abagninin v. AMVAC Chem. Corp.*,

11  545 F.3d 733, 742 (9th Cir. 2008) (repeated failure to cure deficiencies by previous amendment

12  sufficient to deny leave to amend).

13  ## III.    DISCUSSION

14      Plaintiff's FAC alleges eight enumerated causes of action: (1) violation of civil rights under

15  42 U.S.C. § 1983; (2) petition for writ of mandate; (3) petition for administrative mandamus; (4)

16  cancellation of instrument and removal of cloud of title; (5) inverse condemnation; (6) declaratory

17  relief; (7) preliminary and permanent injunction; and (8) land patent protections of property rights.

18  The grounds for dismissal, however, do not correspond to each of these claims, as is typically the

19  case in a motion to dismiss.  Rather, each ground for dismissal corresponds to one of four events

20  underlying Plaintiff's claims, and requires dismissal not of a single claim in its entirety, but of all

21  of the claims only insofar as they pertain to a given event.  The events are: (1) the underlying

22  citation process; (2) the Superior Court cross-actions; (3) the Superior Court contempt order; and

23  (4) the judgment liens.  Accordingly, the Court will organize its discussion by event, rather than by

24  claim.

25  ### A.  Plaintiff's claims based upon the flaws in the underlying citation process are precluded by res judicata.

26

27      All eight of Plaintiff's claims seek relief from the Superior Court's April 20, 2010 judgment

28  and from the re-recorded NOV based upon alleged flaws in the underlying citation process that

6

1    occurred in 2006 and 2007.  Defendants argue that Plaintiff's claims for relief based upon flaws in

2    the underlying citation process are barred by res judicata, because they have already been

3    adjudicated in the underlying state court action.  The Court applies California law to determine the

4    preclusive effect of a prior state court judgment.  *Engquist v. Oregon Dept. of Agriculture*, 478

5    F.3d 985, 1007 (9th Cir. 2007).   Under California law, the doctrine of res judicata will apply if: (1)

6    two cases involve the same claim or cause of action; (2) there has been a final judgment on the

7    merits in the earlier decided case; and (3) the latter case is between the same parties, or parties in

8    privity with them.  *Mycogen Corp. v. Monsanto Co.*, 28 Cal.4th 888, 896 (2002).

9         As to the first element of res judicata, in determining whether a claim or cause of action is

10   the same, California courts apply the "primary rights" theory.  *Robi v. Five Platters, Inc.*, 838 F.2d

11   318, 322 (9th Cir. 1988).  Under this theory, "the violation of a single primary right gives rise to

12   but a single cause of action."  *San Diego Police Officers' Ass'n v. San Diego City Emps. Ret.*, 568

13   F.3d 725, 734 (9th Cir. 2009) (quoting *Crowley v. Katleman*, 8 Cal. 4th 666, 681 (1994)).  Thus,

14   "[i]f two actions involve the same injury to the plaintiff and the same wrong by the defendant then

15   the same primary right is at stake even if in the second suit the plaintiff pleads different theories of

16   recovery, seeks different forms of relief and/or adds new facts supporting recovery."  *Id.* (quoting

17   *Eichman v. Fotomat Corp.*, 147 Cal. App. 3d 1170, 1174 (1983)).

18        Plaintiff's claims for relief based upon the underlying citation of his property allege the

19   same injury to Plaintiff and the same wrong by Defendants as Plaintiff's state court claims: the

20   improper application and enforcement of the County Code against Plaintiff's property.

21   Accordingly, Plaintiff's claims for relief from the underlying citation implicate the same primary

22   right as Plaintiff's state court action against the County.  *San Diego Police Officers' Ass'n*, 568

23   F.3d at 734.  Thus, for purposes of res judicata, the claims in the instant federal action insofar as

24   they are based upon the underlying citation are the same claims that were decided in Plaintiff's

25   state court action against the County, despite the fact that Plaintiff seeks relief under new legal

26   theories such as violations of 42 U.S.C. § 1983 and inverse condemnation.  *Id.*

27        As to the second element of res judicata, the Superior Court's April 10, 2010 judgment on

28   Plaintiff's action against the County, and the May 23, 2011 order on remand permitting the County

1    to re-record the first NOV, are not procedural, but rather address the substance of the claims and

2    have binding effect with no further action.  Accordingly, the April 10, 2010 judgment and May 23,

3    2011 order are final judgments on the merits of Plaintiff's claims concerning flaws in the

4    underlying citation process.  Thus, the Superior Court issued a final judgment on the merits of

5    Plaintiff's claims that the underlying citation process was flawed.  Thus, these claims meet the

6    second element of res judicata.

7            The third element of res judicata requires privity between the parties.  Here, Plaintiff was a

8    party to both suits, as was the County.  The present case also names as defendants the Planning

9    Department, and several individuals who are either County Supervisors or employees who were not

10   parties to the previous suit.  Thus, to satisfy the third element of res judicata, the new defendants

11   would have to be in privity with parties to the previous suit.

12           Privity exists if the party to the new action is "so identified in interest with [a party to the

13   prior action] that he represents the same legal right."  *Armstrong v. Armstrong*, 15 Cal.3d 942, 951

14   (1976).  Where a defendant in the earlier decided case is vicariously liable for the actions of a

15   defendant in the later case, the parties share the same interest unless: (1) the claim asserted in the

16   second action is based upon grounds that could not have been asserted against the defendant in the

17   first action; or (2) the judgment in the first action was based on a defense that was personal to the

18   defendant in the first action.  *Burdette v. Carrier Corp.*, 158 Cal. App. 4th 1668, 1683 (2008).  The

19   County is vicariously liable for the actions taken by its Supervisors and employees to enforce the

20   County Code.  Indeed, this vicarious liability was a precondition for Plaintiff's state court action

21   against the County.

22           Further, neither exception applies here.  The Court recognizes that Plaintiff seeks relief for

23   his injury under new legal theories, such as violations of 42 U.S.C. § 1983 and inverse

24   condemnation.  *See* Op. at 4.  However, Plaintiff could have sought relief under these theories from

25   the County in Plaintiff's Superior Court action.  *See Burdette*, 158 Cal. App. 4th at 1683.  Thus, the

26   first exception, which would require these claims to have been unavailable in the first action, does

27   not apply.  The second exception to privity through vicarious liability does not apply because the

28   judgment in favor of the County was not based upon any defense unique to the County.  *See id.*  It

Case No.: 12-CV-3852-LHK
ORDER GRANTING MOTION TO DISMISS

1  was based instead upon the Superior Court's findings that the County's employees and Supervisors

2  had correctly enforced the County Code.  *See* RNJ, Ex. D.  Accordingly, as to Plaintiff's claims for

3  relief from the underlying citation of his property, the County and the new parties are in privity.

4  *See Burdette*, 158 Cal. App. 4th at 1683.

5          In sum, all three elements of res judicata are satisfied as to Plaintiff's claims for relief from

6  the underlying citation of Plaintiff's property.  Accordingly, the motion to dismiss is GRANTED as

7  to claims arising from the underlying citation.  Plaintiff cannot plead new facts that would alter the

8  preclusive effect of the Superior Court judgment.  Accordingly, this dismissal is with prejudice.

9          This ruling disposes of several of Plaintiff's claims in their entirety, as they are premised

10  only on the underlying citation process.  Specifically, Plaintiff's second, third, fifth, and sixth

11  causes of action allege only flaws in the citation process, and are accordingly now dismissed in

12  their entirety.  However, the rest of Plaintiff's claims allege both violations in the citation process,

13  which have now been dismissed, and harms that accrued after the initial citation of Plaintiff's

14  property.  These later-accruing claims could not have been brought as part of the Superior Court

15  action.  Accordingly, Plaintiff's first, fourth, seventh, and eighth causes of action are not precluded

16  by res judicata insofar as they are based on harms that accrued after the initial citation.[2]

17     **B. Under the *Rooker-Feldman* doctrine, the Court may not exercise jurisdiction over**
18        **Plaintiff's claims that the Superior Court's rulings denied Plaintiff due process in**
          **the Superior Court cross-actions.**

19          Plaintiff claims that the Superior Court improperly prevented Plaintiff from obtaining

20  evidence and improperly entered default judgment against Plaintiff in the County's Superior Court

21  action against Plaintiff.  *See* FAC ¶ 40-41.  *See* RJN, Ex. F.  Plaintiff claims that these actions

22  violated his due process rights under the Fourteenth Amendment of the United States Constitution,

_____
[2] Defendants also argue that all eight causes of action are barred by the applicable statutes of limitations.  The parties do not dispute that Plaintiff's remaining causes of action all have statutes of limitation of at least three years.  See Mot. at 7-9 (accurately listing the applicable statutes of limitation); Op. (not disputing the applicable statutes of limitation).  Plaintiff filed this action on July 24, 2012, less than three years after the April 10, 2010 entry of judgment in the Superior Court cross-actions, and less than one year after the Superior Court's contempt order and the recordation of the judgment liens against Plaintiff's property.  The only underlying event that took place more than three years ago, and thus even has the potential to be time-barred, is the underlying citation process, which occurred in 2006 and 2007.  Because the Court finds that claims relating to the underlying citation process are barred by res judicata, it need not consider whether the claims would otherwise be time-barred, or whether equitable tolling might apply.

Case No.: 12-CV-3852-LHK
ORDER GRANTING MOTION TO DISMISS

United States District Court
For the Northern District of California

1  and thus entitle him to relief under 42 U.S.C. § 1983.  *See* FAC ¶ 40-41.  Plaintiff does not name

2  the Superior Court as a defendant in this action.  *See* FAC.

3      Under the *Rooker–Feldman* doctrine, a federal court may not exercise its jurisdiction to

4  review alleged due process violations in state court proceedings.  *See Dist. of Columbia Court of*

5  *Appeals v. Feldman*, 460 U.S. 462, 476 (1983) (holding that state court determinations can be

6  reviewed only in the United States Supreme Court).  "The purpose of the doctrine is to protect state

7  judgments from collateral federal attack."  *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d

8  1026, 1030 (9th Cir. 2001).  The doctrine applies to "cases brought by state-court losers

9  complaining of injuries caused by state-court judgments rendered before the district court

10  proceedings commenced and inviting district court review and rejection of those judgments."

11  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  This is precisely such a

12  case.  Plaintiff lost in the Superior Court, and is now asking this Court to reject that state court

13  judgment.

14      *Rooker-Feldman* applies "even where the party does not directly challenge the merits of the

15  state court's decision but rather brings an indirect challenge based on constitutional principles."

16  *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 n. 4 (9th Cir. 2003).  Thus, the fact that Plaintiff alleges

17  that the Superior Court violated Plaintiff's constitutional right to due process, rather than bringing a

18  direct attack on the Superior Court's merits determination, does not alter the prohibition on this

19  Court from exercising jurisdiction to review the Superior Court decision.  *Id.*  Accordingly, the

20  *Rooker-Feldman* doctrine prevents this Court from exercising subject matter jurisdiction over

21  Plaintiff's de facto appeal of the Superior Court judgment, and Plaintiff's claims stemming from

22  the conduct of the Superior Court proceedings must be dismissed.  *Kougasian v. TMSL, Inc.*, 359

23  F.3d 1136, 1139 (9th Cir. 2004).

24      Even if Plaintiff were to add the Superior Court as a party in this action, Plaintiff could not

25  allege any facts that would allow this Court to review alleged due process violations committed by

26  the Superior Court in the Superior Court cross-actions.  Accordingly, the Court DISMISSES with

27  prejudice Plaintiff's 42 U.S.C. § 1983 claims for due process violations committed by the Superior

28  Court in the cross-actions.

10

C.  **Plaintiff's claims relating to the Superior Court contempt proceeding are dismissed under collateral estoppel and under the *Younger* abstention doctrine.**

Plaintiff also alleges that the actions of County Counsel and the County in seeking the May 8, 2012 Superior Court contempt order violated Plaintiff's civil rights.  Plaintiff's first cause of action under 42 U.S.C. § 1983 seeks both monetary relief from these alleged civil rights violations and injunctive relief from the outstanding contempt order.  Plaintiff's seventh cause of action, labeled "Preliminary and Permanent Injunction," also seeks injunctive relief from the contempt order.

Plaintiff makes two distinct claims regarding the contempt proceeding.  First, Plaintiff alleges that the contempt order is unconstitutional because "the Order [that Plaintiff must comply with the County Building Code] was impossible to comply with legally because the California Legislature had passed a law, Health and Safety 17910-12, that made the Building Code invalid for existing buildings as old as [Plaintiff's.]"  FAC ¶ 49.  However, Cal. Health and Safety Code §§ 17910-12 limit the applicability only of the State Building Standards Code.  Plaintiff was held in contempt for refusing to comply with the County Building Code, so §§ 17910-12's limitations have no bearing on the violation for which Plaintiff was cited.  Thus, §§ 17910-12 cannot excuse his noncompliance.  *See* FAC ¶ 49.  No amendment to the FAC would alter this law.  Accordingly, Plaintiff's first and seventh causes of action for monetary and injunctive relief on the ground that the contempt order is "impossible to comply with legally" pursuant to Cal. Health and Safety Cod §§ 17910-12 are DISMISSED with prejudice.

Plaintiff's second claim regarding the contempt proceeding is for additional "attempted violations" of Plaintiff's civil rights by County Counsel, and alleges that Plaintiff's opposition to the County's motion for contempt of court "brought up several U.S. . . . Constitutional violations by the County."  FAC ¶ 49.  The FAC does not specify which violations, or what actions allegedly caused them.  These allegations that the County or County Counsel violated Plaintiff's civil rights in seeking the contempt order against Plaintiff are thus not sufficiently specific to state a claim upon which relief could be granted.  *See Iqbal*, 129 S. Ct. at 1949.  Accordingly, Plaintiff's first cause of action under § 1983, insofar as it seeks monetary and injunctive relief arising from

11

1   unspecified violation of his civil rights in connection with the contempt proceedings, is

2   DISMISSED.  As this type of insufficiency can be cured by more specific pleading, the Court

3   would dismiss Plaintiff's non-specific constitutional claims relating to the contempt order without

4   prejudice if there were no independant basis for dismissing these claims.

5          However, Plaintiff's claims relating to the contempt order face another hurdle: the doctrine

6   of *Younger* abstention.  Under the *Younger* abstention doctrine, the Court must abstain from

7   exercising its jurisdiction to enjoin state proceedings that: "(1) are ongoing; (2) implicate

8   'important state interests'; and (3) provide an adequate opportunity to raise federal questions."

9   *Potrero Hills Landfill, Inc. v. County of Solano*, 657 F.3d 876, 882 (9th Cir. 2011) (citing

10  *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 432 (1982).

11  Though originally developed in the criminal context, *Younger* abstention has been extended to

12  prevent federal courts from enjoining outstanding state court contempt proceedings.  *See Juidice v.*

13  *Vail*, 430 U.S. 327 (1977) (applying *Younger* abstention to bar federal review of state court

14  contempt proceedings).  *Younger* abstention applies not only to federal action that would literally

15  enjoin a state court proceeding, but also to federal action that would "have the practical effect of

16  doing so."  *Potrero Hills Landfill*, 657 F.3d at 882.

17         Plaintiff has requested injunctive relief from the Superior Court contempt order.  *See* FAC ¶

18  125(i).  Indeed, Plaintiff has filed a motion for a preliminary injunction in this Court, currently set

19  for hearing on January 3, 2013, to stop enforcement of the Superior Court contempt order.  *See*

20  Dkt. Nos. 36; 80-83; 86.

21         Regarding the first *Younger* factor, the state proceedings are ongoing.  Although the

22  Superior Court has temporarily stayed enforcement of its contempt order, the issue has not been

23  resolved, and the Superior Court will presumably resume its enforcement at some point.  Thus, the

24  first factor is satisfied.

25         Regarding the second *Younger* factor, the Supreme Court has explained that "[a] State's

26  interest in the contempt process, through which it vindicates the regular operation of its judicial

27  system, so long as that system itself affords the opportunity to pursue federal claims within it, is

28

12

surely an important interest." *Juidice*, 430 U.S. at 335.  Here, too, the state's interest in maintaining the operation of its judicial system clearly supports abstention.

Regarding the third *Younger* factor, the Superior Court forum provides an adequate opportunity to raise federal questions relating to the alleged violations of Plaintiff's civil rights. Indeed, Plaintiff's FAC alleges that Plaintiff actually raised his constitutional claims in his opposition to the County's motion for contempt, and again at the contempt hearing, but at no point alleges that the Superior Court refused to hear or adjudicate these federal claims.  FAC ¶ 49. Furthermore, Superior Court contempt orders are appealable, providing further opportunity for state court review of Plaintiff's federal constitutional claims.  The opportunities for raising federal claims afforded by the state court contempt proceedings are thus more than sufficient to satisfy the third *Younger* factor.

In sum, the state court contempt proceedings meet all three *Younger* abstention factors.  *See Potrero Hills Landfill*, 657 F.3d at 882.  Accordingly, *Younger* abstention bars this Court from enjoining the Superior Court contempt proceedings, as requested under Plaintiff's first and seventh causes of action.  Plaintiff cannot amend the FAC to cure the fact that his first and seventh causes of action seek injunctive relief from the outstanding state contempt order.  Accordingly, the Court DISMISSES with prejudice Plaintiff's first and seventh causes of action for injunctive relief regarding the contempt proceedings.[3]

In addition to injunctive relief, Plaintiff also seeks *monetary* relief for the alleged constitutional violations committed by County Counsel and the County in seeking the contempt order.  A finding that County Counsel or the County violated Plaintiff's civil rights in obtaining the contempt order would have the practical effect of enjoining the Superior Court's contempt order, as it would render the contempt order unenforceable.  Thus, the *Younger* doctrine is also implicated by Plaintiff's claims for monetary relief.  *See Potrero Hills Landfill*, 657 F.3d at 882.

---

[3] This Court explained above that the dismissal of claims for unspecified constitutional violations in the contempt proceedings, which were not properly pled, would ordinarily be without prejudice. However, *Younger* abstention would bar these claims even if they were presented again in more complete form.  Accordingly, the claims for unspecified violations in the contempt proceedings must be dismissed with prejudice insofar as they seek injunctive relief.

**United States District Court**
For the Northern District of California

1    Where *Younger* abstention is based upon a plea for monetary damages that would have the

2    practical effect of enjoining a state court proceeding, a federal court must stay the action pending

3    resolution of the state court proceeding, rather than dismissing the action.  *Gilbertson v. Albright*,

4    381 F.3d 965, 982 (9th Cir. 2004).  When the state court proceeding has concluded, the federal

5    court may then hear the claims for monetary relief.  As discussed above, Plaintiff's only basis for

6    seeking this monetary relief – preemption of the county building code – is based upon a flawed

7    legal theory and is dismissed with prejudice.  Thus, there is no federal action for monetary relief to

8    stay.

9    However, as also discussed above, Plaintiff's claim for unspecified "Constitutional

10   violations," FAC ¶ 49, though inadequately pled, might be cured by more specific pleading.  If

11   Plaintiff does file an amended complaint alleging specific constitutional violations and seeking

12   monetary relief in connection with the contempt proceedings, *Younger* abstention will still bar the

13   Court from adjudicating Plaintiff's claim for monetary relief as long as the contempt proceeding is

14   ongoing.  Under *Gilbertson*, though, the Court would be required to stay, rather than dismiss,

15   Plaintiff's amended claims for monetary relief.  *See id.*, 381 F.3d at 982.  Therefore, it is not futile

16   to amend Plaintiff's claim for monetary relief from unspecified constitutional violations by County

17   Counsel and the County during the Superior Court contempt proceedings.  Accordingly, the Court

18   DISMISSES without prejudice these inadequately pled claims for monetary relief.  To the extent

19   that these unspecified violation claims seek injunctive relief, they are fully barred by *Younger*, as

20   explained above, and are thus DISMISSED with prejudice.

21   **D.  Under the *Younger* abstention doctrine, the Court denies Plaintiff's motion for a
         preliminary injunction.**

22   For the same reasons that this Court must dismiss Plaintiff's claims for injunctive relief

23   from the Superior court contempt order, this Court is required by law to deny Plaintiff's motion for

24   a preliminary injunction staying enforcement of the contempt order, currently set for hearing on

25   January 3, 2013.  *See* Dkt. Nos. 36; 80-83; 86.  This Court understands the gravity of the contempt

26   order from which Plaintiff seeks relief, and recognizes that Plaintiff faces the threat of

27   imprisonment if he does not comply with the Superior Court's order to file applications to

28

14

1    demolish or upgrade the buildings on Plaintiff's land.  The Court has read and considered the

2    declarations filed by Plaintiff in support of his motion for a preliminary injunction.  The Court

3    understands that Plaintiff and other Santa Cruz County property owners who provided declarations

4    in support of Plaintiff's motion object to the actions of the Santa Cruz County Planning

5    Department, and feel that they have been wronged by the Planning Department.  However, for the

6    same reasons discussed in the context of Defendants' motion to dismiss, the *Younger* abstention

7    doctrine bars this Court from enjoining the ongoing state court contempt proceedings.  *See Juidice*,

8    430 U.S. 327 (applying *Younger* abstention to state court contempt proceedings).  Accordingly, the

9    Court DENIES Plaintiff's motion for a preliminary injunction, and vacates the January 3, 2013

10    hearing on Plaintiff's preliminary injunction.

11        **E.  The judgment liens against Plaintiff's property are valid.**

12        Plaintiff alleges that the County Recorder recorded two judgment liens against Plaintiff on

13    April 27, 2012, and on July 11, 2012.  Plaintiff seeks relief from these liens under Plaintiff's first,

14    fourth, seventh, and eighth causes of action for three reasons: (1) that the County Recorder did not

15    record the liens along with corresponding "notice[s] of pendency" as required by Cal. Civil Code §

16    8461; (2) that the lien clouds Plaintiff's title to his property because it was not recorded in the

17    proper book by the County Recorder, as required by Cal. Civil Code § 1171; and (3) that the

18    Homestead Act preempts enforcement of the County Code.  These arguments misconstrue the

19    relevant law.

20        Plaintiff alleges that by recording the liens without recording a notice of pendency which he

21    alleges is required by Cal. Civil Code § 8461, the County Recorder "denied [Plaintiff] his Civil

22    Rights under [42] USC 1983."  However, Cal. Civil Code § 8461 does not require the recording of

23    a notice of pendency in order to record a lien.  Instead, a notice of pendency must be recorded

24    within twenty days "[a]fter commencement of an action to enforce a lien."  Under Cal. Civil Code

25    § 8460, an action to enforce a lien must "commence within 90 days after recordation of the claim

26    of lien," otherwise the lien becomes unenforceable.  In other words, the County Recorder was not

27    required to record a notice of pendency when recording the liens against Plaintiff.  Instead, if the

28    County wishes to enforce the lien, the County has up to 110 days, or nearly four months, to record

15

1    a notice of pendency after recording the lien.  Cal. Civil Code §§ 8460-61.  Accordingly, the

2    County Recorder's alleged failure to record a notice of pendency when the County recorded the

3    liens does not violate Cal. Civil Code §§ 8460-61.

4         The FAC does not allege that the County Recorder failed to record a notice of pendency

5    within 110 days after recording the liens.  Indeed, Plaintiff filed the FAC only 95 days after the

6    first lien was recorded, and only 20 days after the second lien was recorded, and so could not

7    possibly make such a claim.  Furthermore, pursuant to Cal. Civil Code §§ 8460-61, failure to

8    record a notice of pendency within 110 days would simply render the properly recorded liens

9    unenforceable, and Plaintiff has not alleged that any of the Defendants has attempted to enforce the

10   liens.  Accordingly, Plaintiff's claim, brought under Plaintiff's first cause of action for violation of

11   42 U.S.C. § 1983, that the failure to record a notice of pendency violated his civil rights, is

12   DISMISSED.  The Court does not express any opinion as to whether Plaintiff could bring a valid

13   cause of action if the County attempted to enforce the judgment liens without having recorded a

14   notice of pendency within 110 days.  However, in an abundance of caution, the Court dismisses

15   this claim without prejudice.

16        Plaintiff's fourth cause of action, for cancellation of instrument and removal of cloud on

17   title, alleges that the judgment liens cloud Plaintiff's title to his property because the liens "were

18   recorded in the same set of books as the subject property contrary to Civil [C]ode 1171."  FAC ¶

19   106-107.  The argument that failure to record the judgment liens separately clouds Plaintiff's title

20   presumes that the purpose of the separate books is to hide liens and other encumbrances to real

21   property.  However, the Cal. Gov't Code makes clear that the purpose of the separate books

22   described in § 1171 is not to hide liens and other encumbrances to real property, but rather to

23   provide notice of the encumbrance to persons investigating the property.  Cal. Gov't Code § 27297.

24   Cal. Gov't Code § 27297 states that recordation in the incorrect book is remedied not by removing

25   the recorded lien from the incorrect book, but instead by placing a cross-reference in the correct

26   book that directs any investigator to search the incorrect book.  Thus, recording the lien in the grant

27   book does not cloud Plaintiff's title, but may instead confer a windfall on Plaintiff to the extent that

28

United States District Court
For the Northern District of California

the recorded lien is hidden from individuals researching Plaintiff's property.[4]  No amendment to the FAC would alter this law.  Accordingly, the Court DISMISSES with prejudice Plaintiff's claim – brought under Plaintiff's fourth cause of action for cancellation of instrument and removal of cloud on title – that the failure to record the judgment liens in a separate set of books clouded Plaintiff's title to his property.

Finally, Plaintiff's first, fourth, seventh, and eighth causes of action all appear to be based upon the theory that the County may not interfere with Plaintiff's property by recording NOVs or liens because the chain of title to Plaintiff's property traces back to a land patent under the Homestead Act of 1862.  Under the Homestead Act of 1862, a settler who "resided upon or cultivated [a plot of up to 160 acres] for five years" could receive a land patent granting title. Homestead Act of 1862 § 2.  Plaintiff argues that the Homestead Act "require[s] Plaintiff] to develop the land," and that the various code enforcement actions against Plaintiff prevent him from complying with this requirement.  FAC ¶ 128.  Plaintiff also appears to allege that a property with a chain of title tracing back to a land patent awarded under the Homestead Act is essentially immune ("protected by covenants") from County Code enforcement actions, including judgment liens. FAC ¶ 129.

As to Plaintiff's first argument, the purported Homestead Act "requirement for [Plaintiff] to develop the land," FAC ¶ 128, does not apply to land patents that have already been issued under the Homestead Act.  *See* Homestead Act of 1862 § 2.  Instead, the Homestead Act requirement for "settlement and cultivation" was a precondition for issuing a land patent.  *See id.*  It is undisputed that the land patent to which Plaintiff traces his title has already issued.  Indeed, the FAC's allegations imply that the land patent was issued decades ago at the latest, *see* FAC ¶ 4, 11, and the Homestead Act was repealed in 1976.  *See* 43 U.S.C. § 1701.  Accordingly, the alleged interference with Plaintiff's ability to develop the land is irrelevant to any claim under the Homestead Act.

---

[4] The Court also notes that Cal. Gov't Code § 27293 explicitly allows recording in a single set of "official records" rather than in separate books.  The FAC does not specify whether the County Recorder uses separate books or uses a single-book "official record" system.

17

As to Plaintiff's second argument, the Court has identified no precedent suggesting that the Homestead Act preempts local land use regulations or the enforcement of local land use regulations. The local land use regulations permitting the notices of violation and judgment liens are thus valid and bind Plaintiff regardless of the provisions of the Homestead Act.

Amendment would be futile, because Plaintiff's Homestead Act preemption claims are defective as a matter of law. Accordingly, the Court DISMISSES with prejudice Plaintiff's claims, brought under Plaintiff's first, fourth, seventh, and eighth causes of action, that the judgment liens are preempted by the Homestead Act.

## IV.     CONCLUSION

For the foregoing reasons, the Court rules as follows:

The Court GRANTS Defendants' motion to dismiss.

The Court DISMISSES WITHOUT PREJUDICE: (1) Plaintiff's claim for monetary damages under 42 U.S.C. § 1983 for civil rights violations committed by County Counsel and the County in seeking the Superior Court contempt order; and (2) Plaintiff's 42 U.S.C. § 1983 claim that the County Recorder did not properly record a notice of pendency for an action to enforce the judgment liens against Plaintiff's property. These claims are brought under Plaintiff's first cause of action.

The Court DISMISSES WITH PREJUDICE all other claims brought by Plaintiff.

The Court DENIES Plaintiff's motion for a preliminary injunction and vacates the January 3, 2013 preliminary injunction hearing.

Plaintiff may file an amended complaint within 21 days of the date of this Order. Failure to meet the 21 day deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in a dismissal with prejudice. Plaintiff may not add any new claims or parties without first obtaining leave from the Court or a stipulation from Defendants.

**IT IS SO ORDERED.**

Dated: November 30, 2012

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

Case No.: 12-CV-3852-LHK
ORDER GRANTING MOTION TO DISMISS